## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Julie Kay Mapson, | Case No. 14-cv-1257 (SRN/BRT) |
| Plaintiff, | |
| v. | **ORDER ADOPTING REPORT AND RECOMMENDATION** |
| Carolyn W. Colvin, Acting Commissioner of Social Security, | |
| Defendant. | |

Daniel L. McGarry, Esq., Collins, Buckley, Sauntry, and Haugh, PLLP, counsel for Plaintiff.

Pamela A. Marentette, Esq., Assistant United States Attorney, counsel for Defendant.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the Report and Recommendation ("R & R") of Magistrate Judge Becky R. Thorson dated July 16, 2015 [Doc. No. 28]. In the R & R, Magistrate Judge Thorson recommended that this Court deny Plaintiff Julie Kay Mapson's ("Plaintiff") Motion for Summary Judgment [Doc. No. 20] and grant Defendant Commissioner of Social Security's ("the Commissioner" or "Defendant") Motion for Summary Judgment [Doc. No. 23]. Plaintiff filed timely objections to the R & R ("Objections") [Doc. No. 30]. Defendant filed a "Non-Objection Response" to the R & R [Doc. No. 29] stating that the recommendation should be adopted based on its findings and Defendant's Motion for Summary Judgment and Memorandum in Support of Motion for Summary Judgment [Doc. No. 24]. Defendant did not respond specifically

1

to Plaintiff's objections.

According to statute, the Court must conduct a *de novo* review of any portion of the Magistrate Judge's opinion to which specific objections are made. 28 U.S.C. § 636(b)(1); Fed. R . Civ. P. 72(b); D. Minn. L.R. 72.2(b). Based on that *de novo* review, the Court adopts the R & R, grants Defendant's Motion, and denies Plaintiff's Motion.

## I.   BACKGROUND

The factual and procedural background of this Social Security matter is well documented in the R & R and is incorporated herein by reference.  (See R & R at 1-28.)

### A. Procedural Background

Plaintiff filed both a Title II application for disability insurance benefits and an application for supplemental security income under Title XVI in September 2012.  (Tr. at 9.)[1]   The Social Security Administration ("SSA") denied Plaintiff's application in December 2012 and again on reconsideration in April 2013.  (Id.)  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") and that hearing was held in October 2013.  (Id.)  The ALJ similarly denied Plaintiff's applications in December 2013 and the Social Security Appeals Council denied Plaintiff's request for review in February 2014.  (Id. at 1-5, 22.)  The Appeals Council's denial made the ALJ's decision the final decision of the Commissioner.  See 20 C.F.R. § 404.981.  Plaintiff sought judicial review, pursuant to 42 U.S.C. § 405(g), through this action [Doc. No. 1].   The parties subsequently filed cross-motions for summary judgment [Doc. Nos. 20, 23].

---

[1] Throughout this Opinion, the abbreviation "Tr." is used to reference the Administrative Record [Doc. No. 8].

### B.  Factual Background

Plaintiff has a long history of medical issues including a back condition, chronic pain, gastric bypass, hyperthyroidism, carpel tunnel syndrome, ankle mobility problems, restless limb syndrome, and daytime sleepiness/fatigue and obstructive sleep apnea.  (See R & R at 3-16.)   Plaintiff received numerous treatments to address these problems including surgeries, pain medication, splints/braces, a BiPAP machine (related to the sleep apnea), and physical therapy, in an attempt to alleviate Plaintiff's symptoms.  (See id.)

Plaintiff also suffered from mental health issues including depression and anxiety. (See id. at 16-21.)   She regularly received treatment from various mental health providers, including a psychiatrist, Dr. Joseph Richmond ("Richmond"), and a psychotherapist, Mr. Donald Resemius ("Resemius").  (See id.)  The combination of therapy and medication had mixed results in treating Plaintiff's mental health symptoms. (See id.)  Notably, Plaintiff was hospitalized, for short periods of a few days each, in July of 2013 and again in September of that same year due to mental health concerns.  (See id. at 19-20.)

### C.  Hearing Testimony

An administrative hearing was held in October 2013 before the ALJ.  (Tr. at 31.) Plaintiff testified on a variety of subjects related to her ability to care for herself, perform various daily functions, her mental health issues and their impact on her functional abilities, and the physical ailments she suffers from, including chronic pain.  (See R & R at 21-23.)   An independent medical expert, Dr. Andrew Murphy Steiner ("Steiner")

testified based on his assessment of Plaintiff's medical records.  (See R & R at 24-25.)
He testified that Plaintiff was diagnosed with chronic pain syndrome, obesity with a
history of bypass procedure, hyperthyroidism, obstructive sleep apnea, and restless leg
syndrome.  (R & R at 24.)  Steiner also testified regarding Plaintiff's long history of
physical ailments and the mixed success of various attempts to treat those ailments.  (See
id. at 24-25.)

Lastly, a vocational expert, Richard Brezinski ("Brezinski"), testified.  (See R & R
at 23-24.)  The ALJ posed a hypothetical to Brezinski which asked him to take into
account numerous impairments and associated limitations and determine whether there
were jobs available for a person with such limitations in the national economy.  (See id.)
Brezinski found that a person faced with these impairments and limitations would be
unable to perform Plaintiff's relevant past work, but could find work in other areas of the
economy.  (See id.)

### D. ALJ's Findings and Decision

The ALJ ultimately concluded that Plaintiff was not under a disability, as that term
is defined by the Social Security Act, from May 2009 (when Plaintiff claimed her
disability arose) to the date of the decision.  (Tr. at 22.)  Following the five-step
evaluation set forth in 20 C.F.R. § 404.1520(a), and considering the entire administrative
record, the ALJ made the following determinations.

First, the ALJ concluded that Plaintiff had not engaged in any gainful employment
since the alleged on-set date of her disabilities.  (Tr. at 11.)  Second, the ALJ found that
Plaintiff had a number of "severe impairments" including chronic pain, obesity,

4

hyperthyroidism, obstructive sleep apnea, restless leg syndrome, back pain, daytime sleepiness, major depressive disorder (recurrent, moderate severity), anxiety disorder, episodic mood disorders, carpel tunnel syndrome, neck and upper body pain related to cervical disc disease, and a variety of spinal impairments. (Id.) Third, the ALJ determined that Plaintiff's impairments, individually or together, did not meet the severity requirements under the applicable SSA guidelines. (Id. at 12-13.) Similarly, the ALJ found that the evidence did not show Plaintiff met the criteria for a mental impairment functional limitation incompatible with the ability to engage in gainful activity. (Id. at 13-14.)

Although the ALJ found that Plaintiff's alleged symptoms could reasonably be caused by her medical impairments, he determined that Plaintiff's representations about the intensity, persistence, and functionally-limiting effects of those symptoms were generally not credible. (Id. at 16-17.) The ALJ also decided that Plaintiff had the residual functioning capacity ("RFC") to perform sedentary work as defined by the SSA guidelines, with certain additional limitations related to movement and tasks to be performed. (Id. at 15.) In that process, the ALJ afforded "little evidentiary weight" to the opinions of Richmond and Resemius because they were "not generally consistent with the evidence taken as a whole." (Id. at 19-20.)

Fourth, the ALJ concluded that Plaintiff could not perform any of her past relevant work in the face of these impairments and limitations. (Tr. at 20.) Fifth and finally, the ALJ determined that there was work in the national economy that Plaintiff could perform even with these impairments and limitations. (Tr. at 21-22.) Ultimately, the ALJ found

that Plaintiff was not under a disability during the relevant period according to 20 C.F.R. §§ 404.1520(g) and 416.920(g).  (Tr. at 22.)

### E.  Plaintiff's Objections to the R & R

On judicial appeal of the ALJ's decision, the Magistrate Judge recommended that Plaintiff's Motion for Summary Judgment be denied and Defendant's Motion for Summary Judgment be granted, effectively upholding the ALJ's decision.  (R & R at 1, 44.)  Plaintiff presents four objections to the R & R.  First, Plaintiff claims the ALJ "committed multiple errors" in considering various medical opinions and what weight they should be given.  (Objections at 1-4.)  Second, Plaintiff alleges the ALJ erred when deciding to discount Plaintiff's subjective claims about her impairments and functional abilities.  (Id. at 4-6.)  Third, Plaintiff asserts the Commissioner failed to meet her burden of proof in showing there were jobs in the national economy Plaintiff could perform, despite her impairments and limitations.  (Id. at 6.)  Fourth, Plaintiff contends the case must be remanded to the Commissioner so that new evidence can be considered.  (Id. at 6-8.)

## II.    DISCUSSION

This Court's review of the Commissioner's decision is

to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.  In determining whether existing evidence is substantial, we consider evidence that detracts from the Commissioner's decision as well as evidence that supports it.  As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because we would

have decided the case differently.

McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000) (citations omitted).  If it is possible "to draw two inconsistent positions from the evidence and one of those positions represents the agency's findings," the Court must uphold those agency findings. Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992).  In order to assess the substantial nature of the evidence supporting the decision of the ALJ, this Court must consider the record as a whole.  Hutsell v. Sullivan, 892 F.2d 747, 748–49 (8th Cir. 1989).

### A. Objection: Weight Given to Medical Opinions

Plaintiff alleges the ALJ committed several errors when assessing various medical opinions in the record.  (Objections at 1-4.)  First, she argues that the ALJ erred by giving little evidentiary weight to the opinions of Plaintiff's psychiatrist, Richmond, or her psychotherapist, Resemius, without "analyzing the required factors under 20 C.F.R. 404.1527(d)."[2]  (Id. at 2.)  Second, because the ALJ gave "no opinion, analysis, or weight" to the opinions of Dr. Hillstrom ("Hillstrom"), Dr. Vacca ("Vacca"), Dr. Niemi ("Niemi"), and James Kearin ("Kearin") (a physician's assistant), Plaintiff contends that this is "prejudicial error that requires remand."  (Id. at 4.)  Plaintiff asserts that these treating physicians, and others, offered medical opinions that the ALJ was "required to mention and consider."  (Id. at 3-4.)  For the reasons stated below, both objections are overruled.

---

[2] The Court presumes Plaintiff meant to cite 20 C.F.R. § 404.1527(c) as this, and not 1527(d), lays out the factors to be considered when evaluating a medical opinion.

### 1.    Analysis of the factors of 20 C.F.R. § 404.1527(c)

When deciding the weight to give a medical opinion an ALJ "must 'always give good reasons' for the particular weight given . . . ." Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000) (quoting 20 C.F.R § 404.1527(c)(2)); see also Haught v. Astrue, 293 F. App'x 428, 429 (8th Cir. 2008) (ALJ need only "express valid reasons" for according little weight to treating physician's opinions).   Good reasons include contradictory or inconsistent opinions from the same physician, or other physicians.  Prosch 201 F.3d at 1013; Haught 293 F. App'x at 429.  "[T]he regulations do not strictly require the ALJ to explicitly discuss each factor [under 20 C.F.R. § 404.1527(c)]."  Roesler v. Colvin, No. CIV. 12-1982 (JRT/JJK), 2013 WL 4519388, at *5, n.5 (D. Minn. Aug. 26, 2013).

Here, as the ALJ explained in his decision, he properly accorded little weight to the opinions of Richmond and Resemius[3] because their reports were internally inconsistent, as well as inconsistent with other treating medical records.  (See Tr. at 19-20.)   Conversely, the opinions of the non-examining state agency psychological consultants were consistent with the evidence taken as a whole and afforded significant

---

[3] It is doubtful whether Resemius can offer a medical opinion for consideration under the § 1527(c) factors.  Resemius is a Licensed Associate Marriage and Family Therapist ("LAMFT").  (Tr. at 971.)  A LAMFT is not an acceptable medical source under the Social Security regulations.  See 20 C.F.R. § 404.1513(a)(2) ("We need evidence from acceptable medical sources to establish whether you have a medically determinable impairment(s).   Acceptable medical sources are: . . . Licensed or certified psychologists."); see also 20 C.F.R. § 404.1513(d)(1) ("In addition to the evidence from the acceptable medical sources listed in paragraph (a) . . . we may also use evidence from other sources . . . .  Other sources include, . . . medical sources not listed in paragraph (a) of this section (for example, . . . therapists).").

weight by the ALJ.  (Id. at 14, 19, 20.)  Furthermore, the ALJ expressly stated that he considered the evidence "in accordance with the requirements of 20 C.F.R. 404.1527" when reaching his conclusions as to Plaintiff's RFC.  (Id. at 15.)

The ALJ thus gave good reasons for affording the opinions of Richmond and Resemius little evidentiary weight, as required.  As this Court held in Roesler, the ALJ was not required to expressly discuss the 20 C.F.R § 404.1527(c) factors.  Plaintiff's objection on this basis is therefore overruled.

### 2.    Failure to consider some of Plaintiff's medical opinions

The R & R found that Dr. Hillstrom and "a number of other medical providers" involved with treating Plaintiff did not offer "medical opinions" as defined by 20 C.F.R. § 404.1527(a)(2) because they were recitations of Plaintiff's subjective claims about her impairments and symptoms.  (See R & R at 39-41.)  Plaintiff objects, claiming these physicians did offer medical opinions addressing the nature and severity of Plaintiff's impairments, symptoms, and diagnoses.  (See Objections at 2-4.)  Without deciding, the Court will assume these treating physicians offered medical opinions and focus on whether the ALJ erred "in giving no opinion, analysis or weight" to these medical opinions.  (See id. at 4.)

The Social Security regulations assure claimants that "we will evaluate every medical opinion we receive."  20 C.F.R. § 404.1527(c).  An ALJ is required to develop the record "fully and fairly," but is "not required to discuss every piece of evidence submitted."  Wildman v. Astrue, 596 F.3d 959, 966 (8th Cir. 2010) (quotation omitted).  Simply because an ALJ fails to specifically cite evidence does not mean that evidence

was not considered. Id. Rather, only when an ALJ does not consider **or** discuss a treating physician's opinion **and** the record contains no contradictory medical opinion has an error occurred. Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001); Prince v. Bowen, 894 F.2d 283, 285-86 (8th Cir. 1990).

The reports of Hillstrom, Vacca, Niemi, and Kearin were part of the administrative record. (See, e.g., Tr. at 326-28, 448-460, 530-541, 961-62.) The ALJ repeatedly noted that his conclusions were based on a review of the record/evidence as a whole.[4] Most notably, the ALJ made clear that only after considering the whole record did he decide that: (1) Plaintiff was not subject to a qualifying physical impairment, (Tr. at 13.); (2) did not meet or medically equal the requirements for any of the mental impairment listings, (id.); and, (3) Plaintiff had the RFC to perform sedentary work (with certain other limitations). (Id. at 15, 20.) It is reasonable to assume the ALJ considered and evaluated the opinions of Hillstrom, Vacca, Niemi, and Kearin in this process. That the ALJ did not cite these opinions specifically does not constitute error. See Wildman, 596 F.3d at

---

[4] See Tr. at 11 ("After careful consideration of the entire record"); Tr. at 12 ("The finding above [regarding Plaintiff's severe impairments] is generally consistent with the evidence taken as a whole"); Tr. at 14 ("The undersigned's findings concerning the 'paragraph B' criteria, is generally consistent with the evidence taken as a whole") (affording significant weight to the portions of the non-examining state agency psychologists' opinions "because they are generally consistent with the evidence taken as a whole"); Tr. at 16 (discounting the credibility of Plaintiff's representations regarding her pain and other symptoms "because they are not generally consistent with the evidence taken as a whole"); Tr. at 17 (affording little evidentiary weight to certain medical opinions because "they are not generally consistent with the evidence taken as a whole"); Tr. at 18 (affording little evidentiary weight to portions of the non-examining state agency psychologists' opinions because "they are not generally consistent with the evidence taken as a whole"); Tr. at 19 (affording other portions of the non-examining state agency psychologists' opinions substantial weight "because they are generally consistent with the evidence taken as a whole")

966.

Furthermore, the ALJ cited to medical opinions, such as those of Steiner and the non-examining state agency psychological consultants ("State Psychologists"), that he found contradicted Plaintiff's medical evidence.  (See Tr. at 13-14, 20.)  The ALJ also found Plaintiff's medical opinions were in some respects internally contradictory, as well as in conflict with some of the treating medical records.  (See id. at 17-18, 19-20.)  Given these inconsistencies and contradictory evidence, the ALJ was not required to explicitly analyze and weigh every treating physician's medical opinion.  See Prince, 894 F.2d at 285-86 (ALJ erred by not considering treating physician's opinion when the record contained no contradictory medical opinion).

The ALJ properly considered all medical opinions offered, as evidenced by his repeated references to reaching conclusions based on a full consideration of the record as a whole.  Moreover, because of contradictory medical opinions in the record, the ALJ was not required to expressly weigh each medical opinion in his decision.  Plaintiff's objection is overruled.

### B.  Objection: Insufficient Weight Given to Plaintiff's Subjective Claims

Plaintiff contends the ALJ "completely ignored" Plaintiff's subjective complaints/claims without providing any analysis.  (Objections at 6.)  According to Plaintiff, if an ALJ discounts the credibility of a claimant's subjective complaints without expressly analyzing those complaints in relation to the factors set forth in Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984), this is reversible error.  (Objections at 4.) For the reasons set forth below, Plaintiff's objection is overruled.

As an initial matter, the Court acknowledges the law is somewhat unclear on how specific an ALJ must be in discussing the Polaski factors when making a determination about a claimant's credibility.  Several decades ago, the Eighth Circuit held, "When rejecting a claimant's complaints of pain, however, the ALJ must make an express credibility determination detailing his reasons for discrediting the testimony."  Cline v. Sullivan, 939 F.2d 560, 565 (8th Cir. 1991).  Simply noting that inconsistencies existed between the claimant's claims and the evidence was not enough.  Id.  Rather, the court stated, "the ALJ must set forth the inconsistencies in the evidence presented and discuss the factors set forth in Polaski when making credibility determinations."  Id.  This implies that an ALJ must expressly discuss the Polaski factors when making a credibility determination.  Cline has not been explicitly overruled.

More recent precedent from the Eighth Circuit does not require express discussion of each factor when assessing the credibility of a claimant's subjective complaints:

> Of course, the ALJ need not explicitly discuss each Polaski factor. It is sufficient if he acknowledges and considers those factors before discounting a claimant's subjective complaints.  The ALJ may discount complaints of pain if they are inconsistent with the evidence as a whole.  If the ALJ discredits a claimant's credibility and gives a good reason for doing so, we will defer to its judgment even if every factor is not discussed in depth.

Milam v. Colvin, No. 14-3240, __ F.3d __, 2015 WL 4491742, at *6 (8th Cir. July 24, 2015) (quotations omitted); see McDade v. Astrue, 720 F.3d 994, 998 (8th Cir. 2013) ("The ALJ is not required to discuss methodically each Polaski consideration, so long as he acknowledges and examines those considerations before discounting the claimant's subjective complaints.").  This standard, not requiring an explicit discussion of each

Polaski factor and focusing instead on whether the ALJ gave "good reasons" for discounting the subjective complaints of a claimant, appears to be the current standard in the Eighth Circuit.  See Perkins v. Astrue, 648 F.3d 892, 900 (8th Cir. 2011); Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004); Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000).  This Court is bound to follow this recent authority and defer to the ALJ's credibility determination so long as it is supported by good reasons and substantial evidence.  See Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006) ("Because the ALJ was in a better position to evaluate credibility, we defer to his credibility determinations as long as they were supported by good reasons and substantial evidence.").

Here, the ALJ's decision to discount the credibility of Plaintiff's subjective complaints was proper.  The ALJ expressly noted that his credibility determination was made pursuant to Polaski and 20 C.F.R. § 404.1529.  (Tr. at 15.)  With these factors in mind, the ALJ determined that Plaintiff's "representations concerning the intensity, persistence, and functionally limiting effects" of her symptoms were "not generally credible, because they are not consistent with the evidence taken as a whole . . . ."  (Tr. at 16.)  Much of the record appears to refute or undermine Plaintiff's subjective claims.[5] (See Tr. at 13-14.)  The R & R accurately dissected much of the record, finding numerous

---

[5] The ALJ did not discuss these opinions and documents, or Plaintiff's daily activities, in the same section of his decision where the Polaski factors are referenced.  However, these items were discussed immediately prior to that section.  Even if this represents a deficiency in the ALJ's opinion writing, that is not a reason to set aside the ALJ's decision as it is unlikely to affect the outcome.  See Strongson, 361 F.3d at 1072 ("We will not set aside an administrative finding based on an arguable deficiency in opinion-writing technique when it is unlikely it affected the outcome.")

examples of evidence that discredited Plaintiff's subjective claims.  (See R & R at 31-33.)

Based on this record, the ALJ had good reason, supported by substantial evidence, to discount Plaintiff's subjective credibility and engaged in sufficient analysis to reach that conclusion.  Plaintiff's objection is overruled.

### C.  Objection: Incomplete Hypothetical to the Vocational Expert

Plaintiff objects that the Commissioner failed to sustain her burden, at step five of the evaluation process for a claimant's Social Security claim, to prove that jobs existed in the national economy which could accommodate Plaintiff's various impairments and limitations.  (Objections at 6 (citing Plaintiff's Memorandum of Law in Support of Summary Judgment at 44 [Doc. No. 21] ("Pl.'s SJ Memo")).)  Specifically, Plaintiff alleges that the hypothetical posed to the vocational expert, Brezinski, failed to present all of Plaintiff's impairments and limitations including: decreased sensation in a finger, Raynaud's disease, balance problems, dizziness, blurred or double vision, restless leg syndrome, chronic sleep and fatigue issues, and problems controlling pain despite medication.  (Pl.'s SJ Memo. at 45.)  She contends that the ALJ erred by failing to incorporate these limitations into the hypothetical, yet relied on the same to find jobs existed in the national economy that could accommodate Plaintiff's impairments and limitations.  (Id.)  For the reasons that follow, Plaintiff's objection is overruled.

At the last step in the sequential evaluation of a claimant's Social Security disability claim, if the claimant proves she is incapable of performing past work, the burden shifts to the Commissioner to prove two things: (1) that the claimant retains the residual functional capacity ("RFC") to do other kinds of work; and, (2) that such other

work exists in the national economy.  Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir.

2000).  "A hypothetical question posed to the vocational expert is sufficient [to satisfy

this burden] if it sets forth impairments supported by substantial evidence in the record

and accepted as true."   Perkins, 648 F.3d at 901-02 (quotations omitted).   The

hypothetical need not include impairments "when there is no medical evidence that these

conditions impose any restrictions on the claimant's functional capabilities or when the

record does not support the claimant's contention that his impairments significantly

restricted his ability to perform gainful employment."  Buckner v. Astrue, 646 F.3d 549,

561 (8th Cir. 2011) (quotations omitted).  The claimant's impairments need not be

presented using "specific diagnostic terms" but rather the limitations posed must "capture

the concrete consequences of those impairments."  Id. (citing Hulsey v. Astrue, 622 F.3d

917, 922 (8th Cir. 2010)).

Here, the ALJ presented a hypothetical to Brezinski that contained the following

impairments and limitations:

> a diagnosis of major depressive disorder . . . characterized as moderate in
> one report . . . anxiety disorder, and it's called episodic mood disorder . . .
> for those impairments that are severe [Plaintiff] has limitations.   [S]he
> wouldn't be able to more than a – essentially a sedentary kind of job . . . no
> more than occasional power gripping as part of a job task; that [Plaintiff]
> shouldn't be doing any overhead tasks;  . . .  no more than occasional
> bending, twisting, stooping, kneeling, crouching, or crawling; that
> [Plaintiff] shouldn't be exposed to hazards such as in unprotected heights or
> around dangerous unprotected machines.   And I would add . . . some non-
> exertional restrictions.   One evaluator limited [Plaintiff] additionally to
> essentially routine, repetitive, two or three-step tasks and instructions; no
> more than superficial contacts with others in the work setting; . . . no more
> than routine stressors of a routine, repetitive kind of job.

(Tr. at 57-58.)  The ALJ also specifically directed that Brezinski take into account the

impairments and limitations stated by the independent medical expert, Steiner.  (Tr. at 57.)  Steiner included the following in his list of impairments: chronic pain, obstructive sleep apnea, daytime sleepiness (possibly due to medication) and restless leg syndrome. (Tr. at 53-55.)  Brezinski also confirmed he had reviewed the vocational evidence before generating his opinion.  (Tr. at 56.)  Still, Brezinski concluded there were jobs within the national economy that could accommodate Plaintiff's limitations.  (Tr. at 21-22, 58.)

This hypothetical adequately encompassed the "concrete consequences" of Plaintiff's impairments and associated limitations.  It explicitly referenced her sleep and fatigue issues, chronic pain, and restless leg syndrome.  Simply because the ALJ directed Brezinski to consider Steiner's list of impairments does not make the hypothetical deficient.  See Buckner, 646 F.3d at 561 (finding a hypothetical was sufficient when it directed the vocational expert to consider limitations presented in a medical opinion).

The ALJ was also aware of Plaintiff's Raynaud's disease and decreased finger sensation.  (Tr. at 38.)  However, he concluded that the limitation on power gripping, consistent with Steiner's testimony, properly accounted for Plaintiff's functioning capacity.[6]  (Tr. at 16.)  Thus, the consequences of these impairments were properly accounted for in the hypothetical.  See Buckner, 646 F.3d at 561 (holding a hypothetical need only "capture the concrete consequences" of a claimant's impairments).

Lastly, the ALJ found numerous bases on which to discount Plaintiff's subjective

---

[6] The ALJ found substantial evidence in the record to support the conclusion that Plaintiff's Raynaud's disease and decreased finger sensation only merited the power gripping limitation.  (See Tr. at 17-18.)

claims, and some medical claims, regarding the limitations associated with her impairments, instead favoring the analysis by Steiner and the State Psychologists.[7]   (See Tr. at 15-20.)   Only those impairments and their associated limitations "supported by substantial evidence in the record and accepted as true" need be included in the hypothetical.   Perkins, 648 F.3d at 901-02.   Any of Plaintiff's impairments that did not meet this standard were not required to be present in the hypothetical.   For all of these reasons, Plaintiff's objection on this basis is overruled.

### D.  Objection: Consideration of New Evidence on Remand

Plaintiff also argues that this matter should be remanded to the ALJ, pursuant to sentence six of 42 U.S.C. § 405(g), so that new evidence may be considered.   (Objections at 6-8.)   Specifically, Plaintiff asks that her medical records containing the daily reports related to the treatment she received during her hospitalizations in July and September of 2013 (collectively, "the Daily Hospital Reports") be reviewed.   (Objections at 7-8; see McGarry Aff. [Doc. No. 22] Exs. A and B [Doc Nos. 22-1 and 22-2].)   Plaintiff claims she had good cause for not producing the Daily Hospital Reports earlier because her insurer failed to provide them, despite a request for all medical records.   (Objections at 7.)

Plaintiff argues that the Magistrate Judge erred by finding the Daily Hospital Reports duplicative of materials already in the administrative record.   (Objections at 7-8.)

---

[7] Despite this fact, the ALJ's hypothetical presented some of the limitations suggested by a physician's assistant, Haler, even though the ALJ gave Haler's opinion little evidentiary weight.   (See Tr. at 17-18, 57-58.)

Lastly, Plaintiff claims the ALJ erred by failing to conduct an independent review of the Daily Hospital Reports despite the fact that the State Psychologists had not reviewed this evidence. (Objections at 8.)

Courts may remand a case to consider new evidence upon a showing of good cause and if the evidence is material. 42 U.S.C. § 405(g). "Material evidence is non-cumulative, relevant, and probative of the claimant's condition for the time period for which benefits were denied, and there must be a reasonable likelihood that it would have changed the Commissioner's determination." Krogmeier v. Barnhart, 294 F.3d 1019, 1025 (8th Cir. 2002) (quotations omitted); see Britton v. Astrue, 622 F. Supp. 2d 771, 790 (D. Minn. 2008) (same). An ALJ has the duty to develop the record, but that duty is not "never-ending." McCoy v. Astrue, 648 F.3d 605, 612 (8th Cir. 2011). Notably, an ALJ may issue a decision "without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." Naber v. Shalala, 22 F.3d 186, 189 (8th Cir. 1994).

The Court need not rule on whether Plaintiff has demonstrated good cause because the Court finds that the Daily Hospital Reports are not material. First, the Daily Hospital Reports are cumulative. The administrative record contains the admission and discharge records (collectively, "the Hospital Summary Reports") for the same hospital stays covered by the Daily Hospital Reports. (Tr. at 892-952.) The ALJ explicitly considered and addressed the Hospital Summary Reports in his decision. (Id. at 12, 19-20.) The Hospital Summary Reports provide detailed accounts of Plaintiff's condition and status, both upon her arrival at the hospital and when she was discharged. (See id. at 892-952)

They also include summaries of Plaintiff's treatment, care, and progress while hospitalized.  (Tr. at 893-94, 922-23.)   Although not entirely duplicative of the Daily Hospital Reports, the Hospital Summary Reports contain much of the same information. (Compare Tr. 892-952 with Exs. A and B [Doc. Nos. 22-1 and 22-2].)

Second, Plaintiff offers no explanation why the Daily Hospital Records would be reasonably likely to change the ALJ's determination.  (See Objections at 6-8.)  Given the cumulative nature of the information contained in the Daily Hospital Reports, it is likely the Daily Hospital Reports would **not** alter the ALJ's decision.  See Krogmeier, 294 F.3d at 1024-25.

Lastly, Plaintiff's assertion that the ALJ was required to conduct an independent review of the Daily Hospital Records because they were not considered by the State Psychologists is incorrect.  Plaintiff cites Carter v. Astrue, 886 F. Supp. 2d 1093, 1112 (N.D. Iowa 2012).  However, Carter does not support Plaintiff's assertion.

There, the claimant ("Carter") alleged the ALJ erred by giving significant weight to the opinions of two non-examining state agency medical consultants despite the fact that they produced their opinions before all of Carter's medical records were provided. Carter, 886 F. Supp. 2d at 1111.  However, the ALJ independently reviewed the after-produced records and found they did not discredit the consultants' opinions.  Id. at 1112. In fact, the records substantiated those opinions.  Id.  The court concluded that the ALJ had not committed any error, in part because he engaged in this independent review.  Id. The court espoused no requirement/rule that such a review take place.  See id. at 1111-12.

Here, the facts are markedly similar to Carter.  The State Psychologists did not

review either the Daily Hospital Reports or the Hospital Summary Reports because their opinions were generated before Plaintiff's hospitalizations occurred.   (See Tr. at 14 (listing dates of December 6, 2012 and April 2, 2013 for these opinions).)  However, as detailed above, the ALJ later conducted an independent review of the Hospital Summary Reports.  In light of this review, the ALJ concluded the State Psychologists' opinions deserved significant weight because "they are generally consistent with the evidence taken as a whole . . . ."  (Id. at 14.)  See Carter, 886 F. Supp. 2d at 1112 ("The ALJ concluded that the state agency medical consultants' assessments were 'consistent with the record as a whole, both at the time of their review and through the date of this decision,' indicating that he considered them in light of the subsequent treatment notes . . . .").  The ALJ's reliance on the State Psychologists' opinions was proper under the Carter analysis.

For the reasons discussed above, Plaintiff's objections are overruled.  Plaintiff's motion for remand pursuant to sentence six of 42 U.S.C. § 405(g) is therefore denied.

## III.   ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.  Plaintiff's Objections [Doc. No. 30] are **OVERRULED**;

2.  The R & R [Doc. No. 28] is **ADOPTED**;

3.  Plaintiff's Motion for Summary Judgment [Doc. No. 20] is **DENIED**;

4.  To the extent Plaintiff seeks to remand pursuant to 42 U.S.C. § 405(g), that motion is **DENIED**;

5.  Defendant's Motion for Summary Judgment [Doc. No. 23] is **GRANTED**.


**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: September 11, 2015                 s/Susan Richard Nelson
                                          SUSAN RICHARD NELSON
                                          United States District Judge